**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**      ) | |
|                                                                 ) | |
| v.                                                           ) | **Crim. Action No. 09cr10004-NG** |
|                                                                 ) | |
| **ORLANDO L. WATKINS,**                 ) | |
|      **Defendant.**                                  ) | |

**GERTNER, D.J.:**

**AMENDED**
**MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO SUPPRESS**
November 17, 2009

This Memorandum has been issued to address a typographical error in the Conclusion of the original Memorandum of November 10, 2009. This is the only correction that has been made.

---

Orlando L. Watkins ("Watkins") moves to suppress the loaded gun and nylon stocking cap that police officers found on him during his arrest on December 5, 2008. The gun forms the basis for the sole count against him -- felon-in-possession of a firearm. See 18 U.S.C. § 922(g)(1). He contends that the gun and cap were fruits of an illegal search, or perhaps more accurately, fruits of an illegal seizure. In either case, however, the Court concludes that the evidence was lawfully discovered. Under <u>California v. Hodari D.</u>, 499 U.S. 621 (1991), the police did not need reasonable suspicion to pursue the fleeing Watkins. Only when Watkins was "seized," that is, when Watkins submitted to the officers' show of authority, was reasonable suspicion required. By that time, Watkins's actions gave the officers sufficient suspicion to seize him as an initial matter, and post-seizure, Watkins' words -- "I got weed" -- gave the officers probable cause to arrest him. Incident to the lawful arrest, the officers' subsequent

search of Watkins' backpack was proper, and therefore so too was the ultimate discovery of the evidence.  Accordingly, the **Defendant's Motion to Suppress (document #11) is DENIED.**

I.      BACKGROUND

On a December night in 2008, police officers, patrolling in an unmarked Ford Crown Victoria, observed Watkins standing outside an apartment building with two other males.[1]  The government alleges, and Watkins does not dispute, that as the officers pulled up, Watkins dashed into an apartment building, throwing an object into the bushes (which turned out to be a half-full beer can) and slinging a backpack over his shoulder as he ran.  The police jumped out of their cruiser and pursued him into the building, where they found him jiggling the handle of an apartment door and saying, "Let me in, let me in."

As one officer started to approach, Watkins turned toward him, dropped the backpack, and started to reach into his pocket.  Before the officer could get to him, Watkins pulled out a small package and said, "It's just weed, I got weed."  The officer took the partially open package and saw small plastic bags of what he believed to be marijuana inside.  Then the officer picked

---

[1] The officers also reported that they were aware of recent criminal activity in the area -- facts which should not be overemphasized in the reasonable suspicion calculus.  The statements were vague; it was not at all clear what the facts were on which it was based, etc.

To be sure, there was testimony that the police had heard reports of carjacking, armed assault and battery, and robbery that had taken place in the weeks and months leading up to the night in question.  But nothing Watkins was doing should have triggered an officer's suspicion based on those prior incidents.  Watkins was standing outside an apartment building with a others, not engaged in anything remotely resembling carjacking or violent crime.  Though an officer's knowledge of a given neighborhood or area can contribute to that officer's level of suspicion, see Wardlow, 528 U.S. at 124, the suspect's conduct must be in line with the nature of the criminality the officer expects.  Police cannot use their general knowledge of "high crime areas" to stop anyone they see.  See United States v. Montero-Camargo, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc) ("We must be particularly careful to ensure that a 'high crime' area factor is not used with respect to entire neighborhoods or communities in which members of minority groups regularly go about their daily business, but is limited to specific, circumscribed locations where particular crimes occur with unusual regularity."), cited with approval in United States v. Wright, 485 F.3d 45, 54 (1st Cir. 2007).

up the backpack, moved Watkins away from the apartment door, and began to place him under arrest.

While the officer was placing Watkins in handcuffs, Watkins became verbally belligerent. The officer dropped the backpack to free up both of his hands. At that point, two other officers had entered the apartment building. One grabbed the backpack and searched it. Inside, he found a loaded .45 caliber handgun. The officers searched the bag more completely a few moments later once they were outside the building. In addition to the gun, they found a beige nylon stocking cap with two holes cut in it.

Watkins was charged pursuant to 18 U.S.C. § 922(g)(1) with one count of felon-in-possession of a firearm. The circumstances of the pursuit and subsequent search are the subject of Watkins' motion to suppress. The Court held a hearing and subsequently asked the parties for additional briefing on whether the officers needed probable cause or reasonable suspicion to justify their initial pursuit of Watkins. The government filed supplemental briefing; Watkins did not. After the time to file had lapsed, the Court ordered that it would rule on the papers as submitted.

**II.     DISCUSSION**

Watkins seeks to suppress the contents of the backpack. Relying on the Fourth Amendment, he argues that the police lacked reasonable suspicion to conduct the Terry stop, which he claims led to his arrest and the search of his bag. The Court concludes that the police (1) had reasonable suspicion to stop Watkins inside the apartment building, and (2) had probable cause to arrest him and search the backpack.

### A.     Reasonable Suspicion to Stop Watkins

Watkins contends that he was stopped and searched without a lawful basis.  Whether that is the case requires a discussion of not only what the officers knew but also when they knew it.  While the Fourth Amendment forbids unreasonable searches and seizures, Terry v. Ohio, 392 U.S. 1, 9 (1968), it permits police to briefly stop, or "seize," a person for investigative purposes if the police have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30).  Before addressing  whether the police had reasonable suspicion, the threshold question is: When, if at all, did the officers' investigation result in a seizure, which would trigger Watkins' Fourth Amendment rights? The timing matters, for "'officers can consider everything that happened up to [the point of seizing the suspect] to establish reasonable suspicion.'"  United States v. Jones, 609 F. Supp. 2d 113, 128 (D. Mass 2009) (quoting United States v. Franklin, 323 F.3d 1298, 1031 (11th Cir. 2003)).

In the absence of physical coercion, a person is "seized" for Fourth Amendment purposes only when he or she actually submits to a police officer's show of authority.  Hodari D., 499 U.S. at 626-29; United States v. Holloway, 499 F.3d 114, 117 (1st Cir. 2007).  A fleeing suspect has not been seized under the Fourth Amendment.  Hodari D., 499 U.S. at 626; see also Holloway, 499 F.3d at 117 ("[Flight] does not manifest an intent to submit to the officers' authority."); United States v. Smith, 423 F.3d 25, 31 (1st Cir. 2005) ("[The defendant's] attempt to avoid being seized by fleeing upon being arrested demonstrates that he had not been seized."). Only when the pursuing officer catches up to the suspect and physically restrains him, or when the suspect finally submits to the officer's show of authority, has the suspect been seized.  See Hodari D., 499 U.S. at 626-29; Holloway, 499 F.3d at 117 ("[The defendant] was not actually

seized until the officers physically overpowered and handcuffed him in Lamothe's apartment."). Only then would the officer need reasonable suspicion.

Accordingly, reasonable suspicion was not required for police to pursue Watkins when he spotted the unmarked cruiser and fled into the apartment building. See United States v. Rogers, 2005 WL 478001, *3 (D. Mass. Mar. 1, 2005) (unpublished order) ("If the officer pursues, that fact alone, does not amount to a seizure for Fourth Amendment purposes, even if pursuit is accompanied by an assertion of authority."). Only after Watkins was inside, when he stopped jiggling the apartment door handle, turned toward the officers and said, "It's just weed," did he submit to their show of authority. (And by then, of course, his admission provided probable cause to search him.)

Watkins' course of conduct -- from the time he spotted the unmarked cruisers and fled until he stopped jiggling the apartment door handle and gave himself up -- gave the officers reasonable suspicion to believe that he was engaged in criminal activity. Watkins' actions were similar to those of the suspect in United State v. Wright, 2009 WL 3019695 (1st Cir. Sept. 23, 2009), which, like this case, concerned officers "seizing" a suspect and later finding a firearm that would be the basis for a felon-in-possession charge. The suspect in Wright was sitting in a car outside a mini-mart when several unmarked police cruisers (Ford Crown Victorias) pulled up. As the cops drove by, one officer saw the suspect lean forward from the backseat to examine one of the cruisers. Id. at *7-*8. The suspect then jumped out of the vehicle and took off running away from the cruiser, refusing to heed the officer's commands to stop and clutching part of his sweatshirt as he ran. Id. at *8-*10. The police gave chase and quickly caught up with him, frisked him, and found a gun.

The First Circuit upheld the search. Id. at *11.  The court credited the evidence that the suspect recognized the unmarked police cruiser, fled immediately thereafter, clutched his sweatshirt, and did not heed the officers' calls to halt.  Id. at *8-*11.  Though the defendant argued that he did not recognize the cruiser and was merely running to his intended location, not fleeing from the police, the court viewed the defendant's conduct from the police's perspective: "The reasonableness of a stop entails an objective inquiry into the stop from the perspective of the . . . officers[.] . . . [W]hat is relevant is not whether [the suspect] actually perceived the officers as police officers, but whether the officers reacted reasonably on seeing him flee." Id. at *8 (quotation omitted).

From the officers' perspectives in this case, the Court concludes that the officers acted reasonably in pursuing and ultimately stopping Watkins.  When Watkins saw the officers' unmarked Crown Victorias, he tossed something into the bushes and took off, slinging his backpack over his shoulder as he darted inside the apartment building.  As the First Circuit found in Wright, all of these facts contribute to an officer's reasonable suspicion.  Id. at *8-*9; see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion. . . .  Headlong flight -- wherever it occurs -- is the consummate act of evasion:  It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); United States v. Scott, 270 F.3d 30, 41 (1st Cir. 2001) ("An individual's flight from police combined with other observations by a police officer may support reasonable suspicion sufficient for detention under Terry.").  Moreover, Watkins's discarding an object into the bushes and grabbing his backpack as he ran raises the same inference that the Wright officers could draw from the suspect clutching his sweatshirt as he ran -- Watkins was trying to conceal contraband from the officers.  Id. at *9.

The only meaningful difference between <u>Wright</u> and this case is that, here, the record is silent as to whether Watkins failed to heed a command to stop.  But even without that fact, the circumstances just described would be sufficient to give the offices reasonable suspicion.  Indeed, even if the officers did not have reasonable suspicion until after they entered the building,[2] Watkins' actions provided it: his jiggling the handle of an apartment door, saying, "Let me in, let me in."

This series of facts, viewed in the aggregate, and viewed in their progression, <u>see id.</u> at *11, gave the officers reasonable suspicion to seize Watkins.

### B.    Probable Cause to Arrest and Search Incident to Arrest

But the Court's inquiry does not end there.  Reasonable suspicion is sufficient only to justify the seizure; the search of Watkins' backpack requires more.  Without a warrant, the police must have acted pursuant to a recognized exception to the Fourth Amendment's warrant requirement.  The search-incident-to-arrest exception is the one the government relies on here.  <u>See</u> <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973).  Under that exception, the police's search of Watkins' backpack will be upheld if the Court concludes that the arrest was lawful, that is, was based on probable cause, <u>Virginia v. Moore</u>, 128 S. Ct. 1598, 1607 (2008) (citing <u>Robinson</u>, 414 U.S. at 235), and that the search was limited to the area within Watkins's

---

[2] The officers did not need reasonable suspicion to enter the apartment building and proceed into the building's common hallway.  Watkins presented no evidence that he owned the building or had any expectation of privacy in its entrance and hallways.  Watkins never entered any particular apartment.  As such, he had no greater rights in the hallway of the building than he had outside.  <u>See</u> <u>United States v. Cruz Pagan</u>, 537 F.2d 554, 558 (1st Cir. 1976) ("We agree with these courts that a person cannot have a reasonable expectation of privacy (in the sense in which the term is used in <u>Ouimette v. Howard</u>, 468 F.2d 1363, 1365 (1st Cir. 1972),] in such a well travelled common area of an apartment house or condominium."); <u>see also</u> <u>United States v. Holland</u>, 755 F.2d 253, 255 (2d Cir. 1985).

immediate control, United States v. Nascimento, 491 F.3d 25, 49 (1st Cir. 2007) (citing Chimel v. California, 395 U.S. 752, 763 (1969)).  Both of those requirements were met here.

A lawful warrantless arrest requires that the police have "'probable cause to believe that the suspect has committed or is committing a crime.'"  United States v. Link, 238 F.3d 106, 109 (1st Cir. 2001) (quoting United States v. Bizier, 111 F.3d 214, 216-17 (1st Cir. 1997)).  To establish probable cause, the government must show that, "'at the time of the arrest, the collective knowledge of the officers involved was sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.'"  Id. (quoting Bizier, 111 F.3d at 217).  To assess the government's claim, the Court looks to the totality of the circumstances.  United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000).

The circumstances in this case indicate that the officers had probable cause to arrest Watkins.  Beyond the suspicious behavior that the police had already observed, Watkins gave the police probable cause when he pulled a package containing marijuana out of his pocket and said, "It's just weed, I got weed."  The arresting officer heard these comments and saw the bags of marijuana inside the package, so he knew Watkins was engaged in criminal activity.  At that point, the officer had all he needed to lawfully arrest Watkins.

With Watkins under arrest, the police could search the area within Watkins' immediate control, that is, "the area from within which he might gain possession of a weapon or destructible evidence."  United States v. Chimel, 395 U.S. at 763.  Watkins' backpack was within that close proximity.  After the arresting officer apprehended Watkins, he picked up the backpack and carried it a few feet down the hall.  Watkins became verbally belligerent.  The officer dropped the backpack to use both hands to place Watkins in handcuffs.  While that was going on, another officer arrived and searched the backpack, finding the firearm inside.  During

the search, the backpack was still on the ground next to Watkins and the arresting officer.  As such, the search took place in an area within Watkins' immediate control and was therefore incident to the arrest.[3]  Accordingly, the search of the backpack was lawful.

## III.     CONCLUSION

The Defendant's motion to suppress (document #11) is **DENIED.**

**SO ORDERED.**

**Date:  November 17, 2009**              /s/ Nancy Gertner
                                          **NANCY GERTNER, U.S.D.C.**

---

[3] So was the second, fuller search of the bag that took place just a few moments later outside the apartment building. Watkins does not challenge the contemporaneity of this second search, so the Court will not dwell long on it.  The record is rather clear that the second search, occurring only minutes after the first, was contemporaneous with Watkins's arrest.  Moreover, during the search, Watkins was outside with the officers, and though in handcuffs, was not going quietly.  As such, the officer safety concerns that underlie the search-incident-to-arrest exception were just as real outside the building as they were inside.